LEONARD KOPELMAN
DONALD G. PAIGE
ELIZABETH A. LANE
JOYCE FRANK
JOHN W. GIORGIO
BARBARA J. SAINT ANDRE
JOEL B. BARD
JOSEPH L. TEHAN, JR.
THERESA M. DOWDY
DEBORAH A. ELIASON
RICHARD BOWEN
DAVID J. DONESKI
JUDITH C. CUTLER
KATHLEEN E. CONNOLLY
DAVID C. JENKINS
MARK R. REICH
BRIAN W. RILEY
DARREN R. KLEIN
JONATHAN M. SILVERSTEIN
ANNE-MARIE HYLAND
JASON R. TALERMAN
GEORGE X. PUCCI

EDWARD M. REILLY
DIRECTOR WESTERN OFFICE

## KOPELMAN AND PAIGE, P. C.

ATTORNEYS AT LAW

31 ST. JAMES AVENUE

BOSTON, MASSACHUSETTS 02116-4102

(617) 556-0007
FAX (617) 654-1735
———
PITTSFIELD OFFICE
(413) 443-6100
———
NORTHAMPTON OFFICE
(413) 585-8632
———
WORCESTER OFFICE
(508) 752-0203

WILLIAM HEWIG III
JEANNE S. McKNIGHT
KATHLEEN M. O'DONNELL
PATRICIA A. CANTOR
THOMAS P LANE, JR.
MARY L. GIORGIO
THOMAS W. MCENANEY
KATHARINE GOREE DOYLE
LAUREN F. GOLDBERG
JEFFREY A. HONIG
MICHELE E. RANDAZZO
GREGG J. CORBO
RICHARD T. HOLLAND
ELIZABETH R. CORBO
MARIA C. ROTA
VICKI S. MARSH
JOHN J. GOLDROSEN
SHIRIN EVERETT
BRIAN E. GLENNON, II
JONATHAN D. EICHMAN
JOSEPH S. FAIR
LAURA H. PAWLE
CAROLYN M. MURRAY
JACKIE COWIN
SARAH N. TURNER
JEFFREY T. BLAKE
R. ERIC SLAGLE

September 27, 2004

Civil Clerk
United States District Court
  for the District of Massachusetts
U. S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:    Dyer Construction, Inc. v. Wareham Conservation Commission and Town of Wareham
       United States District Court C.A. No. 04-11434-NMG

Dear Sir/Madam:

       Enclosed for filing in the above-referenced matter, please find the Defendants' Partial Motion for Judgment on the Pleadings, Statement of Reasons in Support of Defendants' Partial Motion for Judgment on the Pleadings, and Local Rule 7.1 Certification.

       If you have any questions, please do not hesitate to contact me.  Thank you in advance for your attention to this matter.

                                        Very truly yours,

                                        Michele E. Randazzo

MER/kad
Enc.
cc:    Town Administrator
       Conservation Commission
       Mark C. Gildea, Esq.

232198/WARH/0194

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

C.A. NO. 04-11434-NMG

DYER CONSTRUCTION, INC.,

     Plaintiff

v.

WAREHAM CONSERVATION
COMMISSION AND TOWN OF
WAREHAM,

     Defendants

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail-hand-on 9/27/04

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1 of the United States District Court for the District of Massachusetts, counsel for the Defendants hereby certifies that she has attempted in good faith to resolve or narrow the issue in the Defendants' Partial Motion for Judgment on the Pleadings. Defendants' counsel contacted plaintiff's counsel via telephone on September 23, 2004 and September 24, 2004, but was unable to reach plaintiff's counsel. Plaintiff's counsel did telephone Defendants' counsel at 7:56 a.m. on September 24, but did not return Defendants' counsel's subsequent telephone call.

Defendants' counsel also notes that she previously alerted plaintiff's counsel to her intention to seek dismissal of plaintiff's constitutional claims, prior to the Defendants removing this matter from state court to the United States District Court for the District of Massachusetts, during a telephone conversation with plaintiff's counsel on May 28, 2004. Defendants' counsel discussed whether plaintiff would be amenable to dismissing the federal constitutional claims from its complaint, so as to avoid the necessity of Defendants' removal of the case to federal court. It was agreed at that time that the parties would review the case, and discuss it further prior to the expiration of the time for removal. Defendants' counsel attempted to contact plaintiff's counsel on June 16 and June 22, 2004 in this regard, by plaintiff's counsel never returned these telephone calls.

Michele E. Randazzo, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 04-11434-NMG

| |
|---|
| DYER CONSTRUCTION, INC., |
| |
|      Plaintiff |
| |
| v. |
| |
| WAREHAM CONSERVATION COMMISSION AND TOWN OF WAREHAM, |
| |
|      Defendants |

DEFENDANTS' PARTIAL
MOTION FOR JUDGMENT
ON THE PLEADINGS

Now come the Defendants, the Town of Wareham and the Wareham Conservation Commission, pursuant to Fed.R.Civ.P. 12(c), and hereby move for entry of judgment on the pleadings dismissing Counts II and III of the above-captioned Complaint. As grounds therefor, the Defendants state that the plaintiff has failed to plead cognizable claims for violation of its constitutional rights to due process or equal protection, or for taking with just compensation, under either the state or federal Constitutions. As further support, the Defendants rely upon the attached Statement of Reasons in Support of Their Partial Motion for Judgment on the Pleadings.

WHEREFORE, the Defendants respectfully request that the within motion be allowed and that judgment on the pleadings enter dismissing Counts II and III of the plaintiff's Complaint.

DEFENDANTS WAREHAM CONSERVATION
COMMISSION AND TOWN OF WAREHAM,

By their attorneys,

Michele E. Randazzo (BBO #564906)
Kopelman and Paige, P.C.
Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 9/27/04

232200/WARH/0194

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

C.A. NO. 04-11434-NMG

| | |
|---|---|
| DYER CONSTRUCTION, INC.,<br><br>        Plaintiff<br><br>v.<br><br>WAREHAM CONSERVATION<br>COMMISSION AND TOWN OF<br>WAREHAM,<br><br>        Defendants | <u>DEFENDANTS'STATEMENT OF<br>REASONS IN SUPPORT OF THEIR<br>PARTIAL MOTION FOR JUDGMENT<br>ON THE PLEADINGS</u> |

I.    INTRODUCTION

The plaintiff, Dyer Construction, Inc. ("Dyer") has filed a three-count Complaint

challenging a decision by the Wareham Conservation Commission ("Commission") to deny

Dyer's application for an Order of Conditions to construct a single-family dwelling, with a septic

system and associated utilities, on property owned by a non-party to the present action.

Count I of the Complaint seeks judicial review in the nature of *certiorari* and relief from

the Commission's decision, pursuant to G.L. c. 249, §4. This Partial Motion for Judgment on the

Pleadings does not address Count I, which rests wholly on a non-constitutional claim under state

law.

Count II (¶¶ 24-26 of the Complaint) seeks a declaration that a portion of the Wareham

Wetland Protective By-law ("By-law") is invalid and unconstitutional under both the United

States and Massachusetts Constitutions. The challenged section of the By-law, Division VI,

Article II, Section 3 ("setback requirement"), requires a 100-foot separation between a newly-

constructed septic system and any wetlands, as such are defined in the Massachusetts Wetlands

Protection Act, G.L. c. 131, §40. Dyer claims that the By-law's setback requirement violates its

rights to due process and equal protection under both the United States and Massachusetts Constitutions.   In Count III (¶¶ 27-29 of the Complaint), Dyer claims that the setback requirement and the Commission's denial of the requested Order of Conditions so restrict the use of the subject property as to constitute "the equivalent of a taking without compensation." Although Count III does not cite specific constitutional provisions, the Defendants presume that Count III is based on the relevant sections of the United States and Massachusetts Constitutions cited in Count II at ¶ 25 of the Complaint.

For the reasons set forth in detail below, the defendants, Town of Wareham ("Town" or "Wareham") and the Commission, request that this Court dismiss Counts II and III in their entirety, as Dyer has failed to state any valid claims for deprivation of constitutional rights. Should the Court dismiss Counts II and III, the defendants ask that Count I then be remanded to the state court for further proceedings under G.L. c. 249, §4.

II.    FACTUAL BACKGROUND[1]

1.      On or about January 15, 2004, Dyer submitted an application to the Commission, seeking an Order of Conditions to permit the installation of a subsurface sewage disposal system (i.e., a septic system) for property located at 176 Blackmore Pond Road in Wareham, Massachusetts ("Property").  (Complaint ["Compl."], ¶ 8; Administrative Record of Proceedings ["AR"], pp. 11-20).  The Property is owned by Harold Cleveland, a non-party to this suit. (Compl., ¶ 1).

2.      An Order of Conditions was necessary because a portion of the Property is

---

[1] The facts recited herein are taken from the averments of the Complaint, or refer to the contents of the Administrative Record of Proceedings previously filed (as required in state court under Massachusetts Superior Court Standing Order 1-96).  The facts set forth in the Complaint are accepted as true for the purposes of this Motion only, as required by Fed. R. Civ. P. 12(b)(6) and 12(c).  See "Standard of Review," infra.

situated within a resource area protected under the Massachusetts Wetland Protection Act, G.L. c. 131, §40 ("Act"), the Act's implementing regulations (310 CMR 10.00 et seq.), and the By-law. (Compl., ¶ 9).

3.      The Commission held a public hearing on February 4, 2004, at which Dyer was represented by a technical consultant.  After the close of the public hearing, the Commission voted to grant the Order of Conditions under state law, but to deny the Order of Conditions under the Wareham By-law.   The Commission found that the proposed project could be completed in compliance with the Act.  However, the Commission further found that the project did not comply with the By-law, Division VI, Article II, Section 3.  The Commission issued the challenged Order of Conditions on February 24, 2004.  (Compl., ¶¶ 11-12, 14-15 and Exhibit 1; AR, pp. 1-10, 31, 36).

4.      The pertinent portion of Division VI, Article II, Section 3 of the By-law states:

No person shall install a newly constructed septic system within **one hundred feet** (Article 78 of April 25, 1988 Town Meeting; Approved by Attorney General July 28, 1988) of any wetland as defined in Massachusetts General laws, Chapter 131, Section 40.

(AR, p. 43 [emphasis in original]).

6.      A septic system is generally permissible under the Massachusetts State Environmental Code, 310 CMR 15.000 et seq., if the septic tank is located 25 feet or more from a Bordering Vegetated Wetland ("BVW"), and the soil absorption system (i.e., the leaching field) is located 50 feet or more from a BVW.   310 CMR 15.211 (attached hereto for the Court's convenience); see also Tortorella v. Board of Health of Bourne, 39 Mass. App. Ct. 277, 282 (1995).

7.      A BVW is defined as an area where ground water discharges to the surface and where, under some circumstances, surface water discharges to the ground water.  310 CMR

10.55(1) (also attached hereto for the Court's convenience). BVWs are presumed "likely to be significant to public or private water supply, to ground water supply, to flood control, to storm damage prevention, to prevention of pollution, to the protection of fisheries and to wildlife habitat." Id. Furthermore, BVWs "are probably the Commonwealth's most important inland habitat for wildlife." Id.

8.      As quoted in Paragraph 5, above, the By-law has more restrictive requirements for septic system location than the State Environmental Code, since it requires that all portions of a newly-constructed septic system be located at least 100 feet from a wetland (including a BVW), as opposed to the 25/50 feet required under the state regulations. Compare 310 CMR 15.211 with Division VI, Article II, Section 3 (AR, p. 43).

9.      In this case, the leaching field of the proposed septic system was to be situated as close as 51 feet from BVW, which did not satisfy the By-law's 100-foot setback requirement for newly constructed septic systems. (Compl., ¶ 15; AR, pp. 5 and 30 (plan)). Accordingly, the Commission denied the Order of Conditions for the proposed project, on the basis of the project's noncompliance with the By-law's setback requirement. (Compl., ¶ 15; AR, p. 5).

10.     On April 23, 2004, Dyer filed its Complaint in Plymouth Superior Court, appealing the Commission's denial under the Wareham By-law of the requested Order of Conditions. The Defendants removed the case to this Court, as Counts II and III raise federal (and state) constitutional challenges to the actions of the Commission and to the By-law generally.

III.     STANDARD OF REVIEW

The Defendants seek the dismissal of Dyer's constitutional claims raised in Counts II and III of the Complaint through this Partial Motion for Judgment on the Pleadings, pursuant to

Fed.R.Civ. P. 12(c). Under Rule 12(c), the reviewing court shall grant judgment in favor of the moving party if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. Burns International Security Services v. International Union UPGWA, 47 F.3d 14, 16 (2d Cir. 1995). In general, a Rule 12(c) motion is treated in the same manner as a Rule 12(b)(6) motion. Gustafson v. Jones, 117 F.3d 1015, 1017 (7th Cir. 1997). For this reason, for purposes of the motion only, all well-pleaded factual allegations in the opponent's pleading are taken as true. McKamey v. Roach, 55 F.3d 1236, 1237 (6th Cir. 1995). The reviewing court is required to accept all well-pleaded material allegations of the nonmoving party as true and to view all facts and inferences in a light most favorable to the pleader. Gaskell v. Harvard Co-op Society, 3 F.2d 495, 497-498 (1st Cir. 1993). If no material fact precludes entry of judgment, however, judgment on the pleadings is appropriate and should enter. Burns International Security Services, Inc., 47 F.3d at 16.

Thus, in opposing this motion, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Rather, the plaintiff has an affirmative responsibility to put its best foot forward in an effort to present a legal theory that will support its claims. Id. at 23 (citations omitted). In order for its claim to survive, plaintiff must set forth in its complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). The plaintiff cannot rely upon "'subjective characterizations' or unsubstantiated conclusions." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990) (citation omitted). "'[E]mpirically unverifiable' conclusions, 'not logically compelled, or at least supported by the stated facts'," deserve no deference. United States v. AVX Corp., 962 F.2d 108, 114 (1st Cir. 1992) (citing Dartmouth Review v. Dartmouth College,

889 F.2d 13, 16 (1st Cir. 1989)). Similarly, the deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions." Gilbert v. City of Cambridge, 932 F.2d 51, 62 (1st Cir. 1991), cert. denied, 502 U.S. 866 (1991).

In this case, as explained infra, both Counts II and III are subject to dismissal, either in whole or in part, due to procedural bars to suit. Moreover, the allegations of the Complaint are insufficient to state claims under either the United States or Massachusetts Constitutions.

IV.    ARGUMENT

A.    WHERE COUNTS II AND III OF THE COMPLAINT CHALLENGE THE CONSTITUTIONALITY OF A MUNICIPAL BY-LAW, THOSE COUNTS MUST BE DISMISSED DUE TO DYER'S FAILURE TO NOTIFY THE MASSACHUSETTS ATTORNEY GENERAL OF THE SUIT.

Count II of the Complaint seeks a declaratory judgment that the By-law's setback requirement is invalid in its application, on the basis that it violates constitutional guarantees of due process and equal protection. Specifically, the Complaint states:

> The Plaintiff says that Wareham Wetland Protective By-Law, Division VI, Article II, section 3 is invalid in its application in that it is not a reasonable and proper exercise of the police power under the Constitution of Massachusetts, and it deprives the Plaintiff of its Property without due process of law, it imposes arbitrary, unreasonable, discriminatory, vague and indefinite standards and restrictions upon the Plaintiff's right to conduct its business, and deprives the Plaintiff of equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the Unites States and to Articles 1, 7, 10, 1, and 12 of the Declaration of Rights of the Constitution of Massachusetts.

(Compl., ¶ 25). Similarly, Count III argues, among other things, that the By-Law's setback requirement "...constitut[es] an unreasonable exercise of the police power...", presumably on constitutional grounds. (Compl., ¶ 29). Thus, both Counts II and III attempt to articulate constitutional challenges to the Wareham By-law.

Massachusetts law requires that the Massachusetts Attorney General be notified whenever the constitutionality of a municipal by-law is challenged in a declaratory judgment action, and provides that the Attorney General is "entitled to be heard" in such an action. G.L. c. 231A, §8. Significantly, under G.L. c. 231A, §8, the burden is on the plaintiff to so notify the Attorney

6

General (and not on the Court, as required under Fed. R. Civ. P. 24 for constitutional challenges to federal or state [but not local] law). Where Dyer has failed to notify the Attorney General of the constitutional challenges to the By-law contained in Counts II and III of the Complaint, dismissal of those counts is appropriate. Gamache v. Town of Acushnet, 14 Mass. App. Ct. 215, 223 (1982) (citations omitted).

> **B.** COUNT II OF THE COMPLAINT MUST BE DISMISSED, AS DYER LACKS THE REQUISITE PROPERTY INTEREST FOR A DUE PROCESS CLAIM, HAS AN ADEQUATE STATE REMEDY FOR ANY ASSERTED DEPRIVATION OF PROCEDURAL DUE PROCESS, AND HAS FAILED TO ALLEGE FACTS TO SUPPORT A CLAIM FOR DENIAL OF SUBSTANTIVE DUE PROCESS.
>
> > 1. Dyer has no property interest in receiving approval of an Order of Conditions from the Commission, and Dyer's due process claim should therefore be dismissed.

As a preliminary jurisdictional issue, Dyer lacks the property interest that is a prerequisite for alleging a deprivation of either its substantive or procedural due process rights under both the United States and Massachusetts Constitutions.[2]    That portion of Count II that seeks relief for alleged due process violations must therefore be dismissed.

To plead a substantive or procedural due process claim, Dyer must show that it had a property interest in the requested Order of Conditions, and that such interest was deprived without due process. Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

---

[2] The Massachusetts Supreme Judicial Court has held that due process rights under the Massachusetts Constitution, Pt. I, Art. 10, are analogous to those provided by the Fourteenth Amendment to the U.S. Constitution. Gray v. Commissioner of Revenue, 422 Mass. 666, 676 (1996).

Here, the permit that Dyer sought was subject to the Commission's discretion. Where a local authority has discretion to grant or withhold a permit, there is no legitimate claim of entitlement to the permit, and the denial of the permit will not give rise to a due process claim. See Chongris v. Board of Appeals for the Town of Andover, 811 F.2d 36, 43 (1st Cir. 1987) (submission of application does not create entitlement to license); Hovanian at Taunton, Inc. v. City of Taunton, 37 Mass. App. Ct. 639, 646-648 (1994) (where reviewing body has broad discretion to grant or deny permit, likelihood greatly diminished of property interest in permit). Here, the Commission has broad discretionary authority under the By-law to grant or deny an Order of Conditions after assessing the effects of a proposed project on protected wetlands resources and interests. See, e.g., Division VI, Article I, ¶ 5 (AR., p. 42). As such, Dyer cannot establish a legitimate claim of entitlement to issuance of the requested Order of Conditions, an essential element of any due process claim.[3]   Accordingly, Dyer has failed to state a viable claim for a deprivation of substantive or procedural due process.

   2.   Dyer cannot claim a denial of procedural due process, because it received the process required by statute, and a separate adequate post-deprivation remedy exists under state law.

If the Court were to find that Dyer possessed a constitutionally-protected property interest, any procedural due process claim in this case still fails. First, there simply was no violation of procedural due process: Dyer received the process to which it was due under the law, i.e., a public hearing prior to the Commission's decision. G.L. c. 131, §40. Second, an adequate post-deprivation remedy exists under state law, as demonstrated by the action in the nature of *certiorari* that is the basis for Count I of the Complaint.   For these reasons, as discussed more fully below, any procedural due process claim must be dismissed.

8

Under the Act and the By-law, Dyer received the process that it was due.  Dyer had the opportunity to submit an application to support its assertion that its project met statutory requirements.  (See AR, pp. 1-30).  The Commission thereafter scheduled and held a hearing on Dyer's application, with notice to any interested parties, as required under G.L. c.131, §40.  (See AR, pp. 27-29, 31, 33-39).  Dyer's representative was allowed to appear and make a presentation at that hearing (and, in fact, did so), in support of its application.  (Compl., ¶ 8-12; AR, pp. 31, 36).  Whatever its disagreement with the substance of the Commission's decision or the requirements of the By-law, Dyer cannot reasonably claim to have been deprived of procedural due process.

Further, even if such a constitutional claim is presented by the Complaint, it is barred where, as here, adequate post-deprivation remedies exist under state law.  "[A] procedural due process claim is not actionable unless, *inter alia*, no adequate 'post-deprivation remedy' is available under state law."  See Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994); Burnham v. City of Salem, Mass., 101 F.Supp.2d 26, 35 (D. Mass. 2000).  The Court of Appeals for the First Circuit has routinely applied this principle to claims arising from the denial of local land use permits.  See Chongris v. Board of Appeals of Andover, 811 F.2d 38, 40 (1st Cir. 1987); cert. denied, 483 U.S. 1021 (1987); Chiplin Enter., Inc. v. City of Lebanon, 712 F.2d 1524, 1527-1528 (1st Cir. 1983);  Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 832 n.9 (1st Cir. 1982).  Massachusetts appellate courts likewise reject due process challenges to actions of agencies and local boards where judicial review is available.  See, e.g., Rosenfeld v. Board of Health of Chilmark, 27 Mass. App. Ct. 621, 627-628 (1989).

---

[3] To the extent that this Court views the Commission's decision as nondiscretionary in this instance, the required outcome was denial of the project, for failure to comply with the By-law's objective setback requirement.

In the present case, the plaintiff has a remedy under state law, i.e., *certiorari* review of the

Commission's denial of the Order of Conditions, pursuant to G.L. c. 249, §4, a remedy which

plaintiff is in fact pursuing in this case under Count I of the Complaint.  Plaintiff has made no

assertion that the state law remedy is inadequate, nor could such an assertion be legitimately

advanced.  Therefore, any claims under Count II of the Complaint for procedural due process

violations must be dimissed.

        3.     Dyer has failed to state a claim for violation of its substantive due process
              rights.

Turning now to consideration of Dyer's substantive due process rights, if any, Dyer

alleges that the By-law's setback requirement is "invalid in its application," but also appears to

allege that the setback requirement is facially invalid insofar as it "is not a reasonable and proper

exercise of the police power under the Constitution of Massachusetts" and "imposes arbitrary,

unreasonable, . . . vague and indefinite standards and restrictions upon the Plaintiff's right to

conduct its business . . . . "  (Compl., ¶25).  Whether Dyer's substantive due process claim is

characterized as challenging the By-law's setback requirement on a facial or as-applied basis,

Dyer has failed to articulate a viable claim.

        a.     <u>The setback requirement is facially valid.</u>

The By-law's setback requirement satisfies the "rational basis" standard for <u>facial</u>

constitutional validity, and Dyer has not alleged the extreme misconduct or abuse of power that

would be required for a finding that Dyer's right of substantive due process had been violated in

this instance by the Commission's application of the setback requirement.  Federal and

Massachusetts courts have both repeatedly rejected attempts to characterize the denial of a land

use permit as a deprivation of constitutional rights, unless the enabling statute lacks a valid

public purpose or the permitting agency has displayed extreme misconduct in handling the particular application. Neither circumstance is present here, and to the extent that the Complaint articulates a substantive due process claim under Count II, it must therefore be dismissed.

The standard for adjudicating facial substantive due process challenges to land use statutes, by-laws, and regulations is whether "a <u>conceivable</u> rational relationship" exists between the challenged controls and "legitimate governmental ends." <u>Smithfield Concerned Citizens for Fair Zoning</u> v. <u>Town of Smithfield</u>, 907 F.2d 239, 244 (1st Cir. 1990) (emphasis in original). Great deference is shown to the legislative body under this "rational basis" test, and a court will not consider whether the chosen measures are the best possible way to achieve statutory goals, as long as there is some rational relation between them. <u>Id.</u>, at 244-245.

In this case, the By-law's setback requirement, and the By-law as a whole, serve a legitimate public purpose, *e.g.*, the protection of important wetland resources. The requirement of a minimum distance between wetlands and a potential source of pollution or contamination is rationally related to the public purpose, and the State Environmental Code (which Dyer does not challenge) itself establishes minimum setback distances for septic systems. 310 CMR 15.211. It is well-settled that municipalities may impose greater setbacks for septic systems than the minimums specified in the State Environmental Code, and the 100-foot setback in the By-law is not unreasonable. <u>See</u>, <u>e.g.</u>, <u>T.D.J. Dev. Corp.</u> v. <u>Conservation Comm'n of North Andover</u>, 30 Mass. App. Ct. 124, 125-128 (1994). Indeed, the Massachusetts Appeals Court has upheld a municipal requirement, contained in the town's wetlands by-law and its board of health regulations, that leaching fields be a minimum of 150 feet from wetlands—50 feet farther than Wareham's By-law requires. <u>See</u> <u>Tortorella</u>, 39 Mass. App. Ct. at 282-283.

In claiming a denial of due process, Dyer alleges that the By-law's setback requirement imposes "vague and indefinite standards and restrictions[.]" (Compl., ¶25). Such an allegation is directly contradicted by the text of the By-law itself, which imposes a specific, numerical requirement for the minimum setback of a new septic system from BVW. (AR, p. 43). Hence, the By-law's setback requirement cannot be adjudged to be impermissibly vague, because it clearly specifies the conduct that is prohibited. See Donovan v. City of Haverhill, 311 F.3d 74, 77-78 (1st Cir. 2002). Further, it cannot be said that "people of common intelligence must necessarily guess at [the setback requirement's] meaning and differ as to its application." Lopez v. Spencer, 961 F.Supp. 332, 335 (D. Mass. 1997).

b.    The setback requirement is valid as applied.

Dyer has likewise failed to state a valid claim that the By-law's setback requirement, as applied, violates Dyer's substantive due process rights. The United States Court of Appeals for the First Circuit and the Massachusetts Supreme Judicial Court have often expressed their reluctance to entertain substantive due process challenges to land use decisions by local boards. See, e.g., PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) ("This Court has repeatedly held...that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process."); Chiplin Enters., Inc., 712 F.2d at 1528 (denying due process claim for alleged unreasonable delay on application for building permit); Creative Environments, Inc., 680 F.2d 822 at 833; see also Freeman v. Planning Bd. of West Boylston, 419 Mass. 548 (1995) (reversing jury verdict of substantive due process violation against planning board), cert. denied, 516 U.S. 931 (1995). "Indeed, the First Circuit has held that denials, suspensions, and revocations of permits or professional licenses, including those

involving procedural irregularity, do not ordinarily implicate substantive due process."
Fitzgerald v. Town of Kingston, 13 F.Supp.2d 119, 125 (D. Mass. 1999).

A complaint pleads a substantive due process violation by a local administrative agency
only if the facts alleged are "shocking or violative of universal standards of decency." Amsden,
904 F.2d at 757 (quoting Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir. 1979), cert. denied, 444
U.S. 1035 (1980)). The plaintiff must allege government conduct that is nothing short of "truly
horrendous." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir.
1992). The First Circuit has particularly required "conscience shocking" behavior to be
established for a plaintiff to pursue a claim for substantive due process in the context of land use
permitting. See Licari v. Ferruzzi, 22 F.3d 344, 349 (1st Cir. 1994). The level of misconduct
must be "stunning, evidencing more than humdrum legal error." Amsden, 904 F.2d at 754 n.5.
It is not enough to show that the board "exceeded, abused or 'distorted' its legal authority,"
Creative Environments, Inc., 680 F.2d at 833, or that it committed an outright violation of state
law, Chiplin, 712 F.2d at 1528. "It is bedrock law in this circuit . . . that violations of state law--
even where arbitrary, capricious, or undertaken in bad faith--do not, without more, give rise to a
denial of substantive due process under the U.S. Constitution." Coyne v. City of Somerville, 972
F.2d 440, 444 (1st Cir. 1992).

Dyer has not alleged any facts that would support characterizing the Commission's
decision as "truly horrendous" or "shocking or violative of universal standards of decency."
Any substantive due process claim based upon the Commission's application of the By-law to
Dyer's proposed project must therefore be dismissed, leaving Dyer to pursue the judicial review
available to it under G.L. c. 249, §4.

C.    DYER'S CLAIM FOR A DEPRIVATION OF ITS CONSTITUTIONAL RIGHT
TO EQUAL PROTECTION OF THE LAW, AS STATED IN COUNT II OF
THE COMPLAINT, MUST BE DISMISSED, AS DYER HAS NOT ALLEGED
ANY FACTS SHOWING INEQUITABLE TREATMENT BASED ON
IMPERMISSIBLE CONSIDERATIONS.

In Count II of its Complaint, Dyer seeks a declaratory judgment that the By-law's setback

requirement "is invalid in its application" because, *inter alia*, it "deprives the Plaintiff of equal

protection of the laws," contrary to the Fourteenth Amendment of the U.S. Constitution and

Articles 1,7,10,11,12 of the Declaration of Rights of the Massachusetts Constitution.[4]  (Compl.,

¶25).  This single conclusory allegation is the only reference in the Complaint to a deprivation of

equal protection, and Dyer has not made any factual allegations in the Complaint to support such

a claim.  This failure to plead "facts sufficient to convey specific instances of unlawful

discrimination" is reason enough for dismissal of Dyer's equal protection claim.  See Correa-

Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990) (quoting Dartmouth Review, 889

F.2d at 16).

To establish a denial of equal protection, a plaintiff must show: (1) that it was treated

differently from others similarly situated; and (2) that the selective treatment was based on

impermissible considerations, such as discrimination against members of protected classes or an

intent to inhibit or punish the exercise of constitutional rights.  "[A]s a general matter, the equal

protection clause serves to protect suspect classes and fundamental interests from inequitable

treatment." Yerardis's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town

of Randolph, 932 F.2d 89, 94 (1st Cir. 1991).

---

[4] Dyer does not specify which Articles of the Declaration of Rights correspond to its various constitutional claims.
The Defendants presume that Dyer's state equal protection claim is asserted on the basis of Article 1 of the
Declaration of Rights.  The standard of review for equal protection claims is identical under the Federal and
Massachusetts Constitutions.  Murphy v. Department of Correction, 429 Mass. 736, 739 n.3 (1999).

> "Liability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; <u>and</u> (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

<u>Id.</u> at 92 (quotation and citation omitted).[5]

Dyer has not alleged that it was treated differently from a similarly situated party, or that the Commission applied the By-law's setback requirement in a selective or disparate manner to his application. Nor has Dyer made any allegation of an exercise of bad faith by the Commission, or a motivating animus towards Dyer. Both unequal treatment, and intentional and purposeful discrimination, are required to raise a constitutional claim to denial of equal protection:

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.

<u>Snowden</u> v. <u>Hughes</u>, 321 U.S. 1, 8 (1944).

Further, a challenge to land use regulation based on a denial of equal protection is only viable in the case of unusual and egregious conduct by public officials, which Dyer has not alleged in this case. Both the Court of Appeals for the First Circuit and the Massachusetts Supreme Judicial Court have emphasized that equal protection claims are rarely valid in the case of challenges to decisions of local land use regulatory entities, given the availability (as in the current case) of other remedies under state law. In <u>Creative Environments, Inc.</u>, the First Circuit noted that an equal protection claim challenging the denial of land use permit approvals may be

---

[5] Even if Dyer claims to be a "class of one" for equal protection purposes, it has not alleged any facts in support of a claim of discriminatory treatment, nor evidence of an arbitrary or improper motive on the part of the Commission or the Town for the denial of the Order of Conditions under the By-law. <u>See</u> <u>Donovan</u> v. <u>City of Haverill</u>, 311 F.3d 74, 76-7 (2002), <u>citing</u> <u>Village of Willowbrook</u> v. <u>Olech</u>, 528 U.S. 564 (2000).

valid where the challenged official conduct involves "gross abuse of power, invidious

discrimination, or fundamentally unfair procedures[,]" but not where the litigation involves "the

run of the mill dispute between a developer and a town planning agency[.]" 680 F.2d at 832-833

& n.9. The Creative Environments Court further stated:

> [E]very appeal by a disappointed developer from an adverse ruling . . . necessarily
> involves some claim that the board exceeded, abused or 'distorted' its legal authority in
> some manner, often for some allegedly perverse (from the developer's point of view)
> reason. It is not enough simply to give these state law claims constitutional labels such as
> "due process" or "equal protection" in order to raise a substantial federal question . . . .

Id.; see also PFZ Properties, Inc. v. Rodrigues, 928 F.2d 28, 32 (1st Cir. 1991); Rubinovitz v.

Rogato, 60 F.3d 906, 910 (1st Cir. 1995).

Massachusetts courts have similarly given short shrift to equal protection (and due

process) claims brought by disgruntled land-use permit applicants:

> Due process or equal protection claims are very seldom the means to seek review of the
> actions of land use agencies, with the door only slightly ajar for relief in "truly horrendous
> situations."

Wyman v. Zoning Bd. of Appeals of Grafton, 47 Mass. App. Ct. 635, 636 (1999) (citations

omitted).

Dyer has stated its equal protection claim in terms of the "application" of the By-law's

setback requirement. Even if his claim could somehow be construed as a facial challenge to the

setback requirement, it would still fail to state a claim for relief that would be independent of the

substantive due process claim addressed supra. See Gilbert, 932 F.2d at 66 (facial equal

protection claim dismissed as reformulation of invalid substantive due process claim). If Dyer

intends to claim that the By-law's setback requirement facially denies equal protection, its claim

must fail. Moreover, without allegations of invidious discrimination against a suspect class or

the abridgement of a fundamental right, a law that establishes classifications will be subject

facially only to "rational basis" review, and will be upheld as long as it bears a rational relation to a legitimate public purpose. See Romer v. Evans, 517 U.S. 618, 633 (1996); Murphy, 429 Mass. at 739-740. As stated above, wetlands protection is a legitimate public purpose furthered by both state and local regulation, and preventing the siting of septic systems in close proximity to wetlands promotes the wetland values sought to be protected under state and local law. The Court must defer to this reasonable legislative classification. See Murphy, 429 Mass. at 753.

> D.    COUNT III OF THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION, WHERE DYER, AS A NON-OWNER, LACKS STANDING TO PURSUE A CLAIM FOR A REGULATORY TAKING, AND WHERE DYER HAS NOT YET PURSUED AVAILABLE STATE REMEDIES TO OBTAIN COMPENSATION.

Dyer claims in Count III that the application of the By-law's setback requirement, through the Commission's denial of the Order of Conditions, constitutes a taking without compensation. (Compl., ¶ 29). Assuming that Dyer's claim rests on constitutional grounds[6], it must be dismissed, because Dyer lacks standing and the claim, in any event, is not ripe for adjudication.

> 1.    As a non-owner of the Property, Dyer lacks standing to bring a claim for a regulatory taking.

Dyer admits that it is not the owner of the Property, nor was it the owner at the time the Commission issued its denial of the Order of Conditions. (Compl., ¶ 1). Rather, Harold Cleveland, who is not a party to this action, is the owner of the Property. (Id; see also AR, p.13 (identifying Dyer as the applicant for the Order of Conditions, and Cleveland as the owner of the

---

[6] Dyer does not specify the constitutional basis for its claim in Count III of the Complaint that the denial of the Order of Conditions constitutes a "taking without compensation." Defendants have presumed that Dyer relies on the provisions of the United States and Massachusetts Constitutions cited in Count II that would conceivably be relevant to a taking claim, namely the Fifth and Fourteenth Amendments of the United States Constitution, and Article 10 of the Declaration of Rights to the Massachusetts Constitution. Analysis of a regulatory taking claim under either the Federal or Massachusetts Constitutions is substantially the same. Quinn v. Rent Control Board of Peabody, 45 Mass. App. Ct. 357, 373 n. 17 (1998); Bromfield v. Treasurer & Receiver Gen., 390 Mass. 665, 668 (1983) (state constitution affords parallel protection to United States Constitution of taking claims); Davidson v. Commonwealth, 8 Mass. App. Ct. 541, 546-547 n.7 (1979).

Property)).  The proper party to assert a taking claim is the owner of the property, as it is the

owner's fee in the property that is diminished by the taking.  See, e.g., Evangelical Lutheran

Church of Glendale v. County of Los Angeles, 482 U.S. 304, 318-320 (1987); see also Howland

v. Greenfield, 231 Mass. 147, 148 (1918).  "One may not claim standing to vindicate the

constitutional rights of a third party."  Slama v. Attorney General, 384 Mass. 620, 624 (1981)

(citation omitted).  Further, a third party should not litigate the rights of a landowner when there

is nothing preventing the landowner from bringing suit or requiring the third party to litigate on

behalf of the landowner.  Singleton v. Wulff, 428 U.S. 106, 115 (1976).  Dyer's bald allegation

that it is the "contract purchaser" (Compl., ¶ 1) of the Property does not aid the Court in

determining whether Dyer has sufficient legal interest in the Property such that its property rights

might be affected by the Commission's decision.

 As Dyer is not the owner of the Property, and was not the owner when the Commission

issued the denial of the Order of Conditions, Dyer lacks standing to pursue a claim for regulatory

taking.  Count III of the Complaint must therefore be dismissed.

  2. Dyer has not pursued compensation through remedies available under
   Massachusetts law, and its Federal regulatory taking claim is therefore not
   ripe for adjudication.

 Even assuming, arguendo, that this Court finds that Dyer has standing to pursue a Federal

regulatory taking claim in the present case, Count III of the Complaint must still be dismissed, as

such a claim is not yet ripe for adjudication, and the Court therefore lacks subject matter

jurisdiction.  First, and perhaps foremost, until such time as the Commission's Decision has

been adjudicated to be incorrect, plaintiff simply cannot establish that the Decision resulted in a

regulatory taking.   In other words, Count III does not become ripe until the state court (or other

court of competent jurisdiction) resolves Count I of the Complaint in plaintiff's favor.

Second, Dyer has not alleged or shown that it has sought, and been denied, just compensation through the remedial procedures provided under Massachusetts law. That step is a prerequisite for asserting a constitutional claim of a taking without just compensation, and Dyer's failure to pursue that relief means that its claim must be dismissed as premature.[7]

In the taking context, "no constitutional violation occurs until just compensation has been denied." Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 n. 13 (1985). In Williamson, the Court found that a taking claim is not ripe until petitioners "seek compensation through the procedures that the state has provided for doing so." Id. If the state "provides an adequate process for obtaining compensation, and resort to that process holds out some realistic promise of yielding just compensation, an owner of property has no cognizable claim against the State in respect to an alleged confiscation." Gilbert, 932 F.2d at 63.

The United States District Court for the District of Massachusetts has recognized that G.L. c. 79, which establishes a right of compensation for inverse condemnation, "provides a means by which a plaintiff may seek redress for an alleged deprivation of property" and "that remedy has been found to be adequate." Marietta Realty, Inc. v. Springfield Redev. Auth., 902 F.Supp. 310, 313 (D. Mass. 1995) (where plaintiff sought compensation for diminution in property value caused by an announced but unexecuted eminent-domain taking, claim was barred by plaintiff's failure to pursue compensation under G.L. c. 79).

As in Williamson and Marietta, Dyer here claims that the decision of a public authority has effectively taken its property, but Dyer has failed entirely to pursue the remedies provided to it by G.L. c. 79, a comprehensive statutory scheme allowing property owners to pursue

---

[7] The analysis of the procedural prerequisites for a Federal taking claim is the same, whether the claim is asserted under the due process protections of the Fourteenth Amendment or the just-compensation clause of the Fifth Amendment. See Marietta Realty, Inc. v. Springfield Redev. Auth., 902 F.Supp. 310, 313-314 (D. Mass. 1995).

compensation for property allegedly taken.  Under these circumstances, the holding in

Williamson clearly controls.  A plaintiff may not seek to bypass the judicial procedure created by

a state legislature for the award of compensation for a taking, by bringing a Federal taking claim.

Accordingly, Dyer's taking claim is not ripe, and it must therefore be dismissed for lack of

subject matter jurisdiction.

V.    CONCLUSION

WHEREFORE, for the reasons set forth above, the Defendants respectfully request that

this Court dismiss Count II and Count III of the Complaint.

DEFENDANTS WAREHAM CONSERVATION
COMMISSION AND TOWN OF WAREHAM,

By their attorneys,

_____
Michele E. Randazzo (BBO #564906)
Kopelman and Paige, P.C.
Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

224615v2/WARH/0194

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail hereon _4/27/04_

20

**10.55: Bordering Vegetated Wetlands (Wet Meadows, Marshes, Swamps and Bogs)**

310 CMR 10.55

## CODE OF MASSACHUSETTS REGULATIONS
### TITLE 310:  DEPARTMENT OF ENVIRONMENTAL PROTECTION
### CHAPTER 10.00:  WETLANDS PROTECTION

*Current through March 12, 2004, Register #995*

**10.55: Bordering Vegetated Wetlands (Wet Meadows, Marshes, Swamps and Bogs)**

(1) Preamble. Bordering Vegetated Wetlands are likely to be significant to public or private water supply, to ground water supply, to flood control, to storm damage prevention, to prevention of pollution, to the protection of fisheries and to wildlife habitat.

The plants and soils of Bordering Vegetated Wetlands remove or detain sediments, nutrients (such as nitrogen and phosphorous) and toxic substances (such as heavy metal compounds) that occur in run-off and flood waters.

Some nutrients and toxic substances are detained for years in plant root systems or in the soils. Others are held by plants during the growing season and released as the plants decay in the fall and winter. This latter phenomenon delays the impacts of nutrients and toxins until the cold weather period, when such impacts are less likely to reduce water quality.

Bordering Vegetated Wetlands are areas where ground water discharges to the surface and where, under some circumstances, surface water discharges to the ground water.

The profusion of vegetation in Bordering Vegetated Wetlands acts to slow down and reduce the passage of flood waters during periods of peak flows by providing temporary flood water storage and by facilitating water removal through evaporation and transpiration. This process reduces downstream flood crests and resulting damage to private and public property. During dry periods the water retained in Bordering Vegetated Wetlands is essential to the maintenance of base flow levels in rivers and streams, which in turn is important to the protection of water quality and water supplies.

The Act defines freshwater wetlands by hydrology and vegetation. Hydrology is the driving force which creates wetlands, but it is a transient, temporal parameter. The presence of water at or near the ground surface during a significant portion of the year supports, and in fact promotes, the growth of wetland indicator plants. Prolonged or frequent saturation or inundation also produces hydric soils, and creates anaerobic conditions that favor the growth of wetland indicator plants. Hydric soils are direct indicators of long-term hydrologic conditions and are present throughout the year.


---------- 23457----------

Wetland vegetation supports a wide variety of insects, reptiles, amphibians, small mammals and birds which are a source of food for important game fish. Bluegills (Lepomis macrochirus), pumpkinseeds (Lepomis gibbosus), yellow perch (Perca flavescens), rock bass (Ambloplites rupestris) and all trout species feed upon nonaquatic insects. Large-mouth bass (Micropterus salmoides), chain pickerel (Esox niger) and northern pike (Esox lucius) feed upon small mammals, snakes, nonaquatic insects, birds and amphibians.

Wetland vegetation provides shade which moderates water temperatures important to fish life. Wetlands flooded by adjacent water bodies and waterways provide food, breeding habitat and cover for fish. Fish populations in the larval stage are particularly dependent upon food provided by over-bank flooding which occurs during peak flow periods (extreme storms) because most river and stream channels do not provide sufficient quantities of the microscopic plant and animal life required for food.

Bordering vegetated wetlands are probably the Commonwealth's most important inland habitat for wildlife. The hydrologic regime, plant community composition and structure, soil composition and structure, topography, and water chemistry of bordering vegetated wetlands provide important food, shelter, migratory and overwintering areas, and breeding areas for many birds, mammals, amphibians and reptiles. A wide variety of vegetated wetland plants, the nature of which are determined in large part by the depth and duration of water, as well as soil and water composition, are utilized by varied species as important areas for mating, nesting, brood rearing, shelter and food (directly and indirectly). The diversity and interspersion of the vegetative structure is also important in determining the nature of its wildlife habitat. Different habitat characteristics are used by different wildlife species during summer, winter and migratory seasons.

Although the vegetational community can often be analyzed to establish an accurate wetland boundary, sole reliance on the presence of wetland indicator plants can be misleading because some species thrive in both uplands and wetlands. Gently sloping areas often produce large transitional zones where the vegetational boundary is difficult to delineate. Hydrology can supplement vegetative criteria to enhance the technical accuracy, consistency, and credibility of wetland boundary delineations, and are especially useful for analyzing disturbed sites.

(2) Definition, Critical Characteristics and Boundary.

(a) Bordering Vegetated Wetlands are freshwater wetlands which border on creeks, rivers, streams, ponds and lakes. The types of freshwater wetlands are wet meadows, marshes, swamps and bogs. Bordering Vegetated Wetlands are areas where the soils are saturated and/or inundated such that they support a predominance of wetland indicator plants. The ground and surface water regime and the vegetational community which occur in each type of freshwater wetland are specified in M.G.L. c. 131, § 40.

########## 23458 ##########

(b) The physical characteristics of Bordering Vegetated Wetlands, as described in 310 CMR 10.55(2)(a), are critical to the protection of the interests specified in 310 CMR 10.55(1).

(c) The boundary of Bordering Vegetated Wetlands is the line within which 50% or more of the vegetational community consists of wetland indicator plants and saturated or inundated conditions exist. Wetland indicator plants shall include but not necessarily be limited to those plant species identified in the Act. Wetland indicator plants are also those classified in the indicator categories of Facultative, Facultative+, Facultative Wetland-, Facultative Wetland, Facultative Wetland+, or Obligate Wetland in the National List of Plant Species That Occur in Wetlands: Massachusetts (Fish & Wildlife Service, U.S. Department of the Interior, 1988) or plants exhibiting physiological or morphological adaptations to life in saturated or inundated conditions.

1. Areas containing a predominance of wetland indicator plants are presumed to indicate the presence of saturated or inundated conditions. Therefore, the boundary as determined by 50% or more wetland indicator plants shall be presumed accurate when:

a. all dominant species have an indicator status of obligate, facultative wetland+, facultative wetland, or facultative wetland-and the slope is distinct or abrupt between the upland plant community and the wetland plant community;

b. the area where the work will occur is clearly limited to the buffer zone; or

c. the issuing authority determines that sole reliance on wetland indicator plants will yield an accurate delineation.

2. When the boundary is not presumed accurate as described in 310 CMR 10.55(2)(c)1.a. through c. or to overcome the presumption, credible evidence shall be submitted by a competent source demonstrating that the boundary of Bordering Vegetated Wetlands is the line within which 50% or more of the vegetational community consists of wetland indicator plants and saturated or inundated conditions exist. The issuing authority must evaluate vegetation and indicators of saturated or inundated conditions if submitted by a credible source, or may require credible evidence of saturated or inundated conditions when determining the boundary. Indicators of saturated or inundated conditions sufficient to support wetland indicator plants shall include one or more of the following:

---------- 23459----------

b. observation of prolonged or frequent flowing or standing surface water;

c. characteristics of hydric soils.

3. Where an area has been disturbed (e.g. by cutting, filling, or cultivation), the boundary is the line within which there are indicators of saturated or inundated conditions sufficient to support a predominance of wetland indicator plants, a predominance of wetland indicator plants, or credible evidence from a competent source that the area supported or would support under undisturbed conditions a predominance of wetland indicator plants prior to the disturbance.

(3) Presumption. Where a proposed activity involves the removing, filling, dredging or altering of a Bordering Vegetated Wetland, the issuing authority shall presume that such area is significant to the interests specified in 310 CMR 10.55(1). This presumption is rebuttable and may be overcome upon a clear showing that the Bordering Vegetated Wetland does not play a role in the protection of said interests. In the event that the presumption is deemed to have been overcome, the issuing authority shall make a written determination to this effect, setting forth its grounds (Form 6).

(4) General Performance Standards.

(a) Where the presumption set forth in 310 CMR 10.55(3) is not overcome, any proposed work in a Bordering Vegetated Wetland shall not destroy or otherwise impair any portion of said area.

(b) Notwithstanding the provisions of 310 CMR 10.55(4)(a), the issuing authority may issue an Order of Conditions permitting work which results in the loss of up to 5000 square feet of Bordering Vegetated Wetland when said area is replaced in accordance with the following general conditions and any additional, specific conditions the issuing authority deems necessary to ensure that the replacement area will function in a manner similar to the area that will be lost:

1. the surface of the replacement area to be created ("the replacement area") shall be equal to that of the area that will be lost ("the lost area");

2. the ground water and surface elevation of the replacement area shall be approximately equal to that of the lost area;

3. The overall horizontal configuration and location of the replacement area with respect to the bank shall be similar to that of the lost area;

4. the replacement area shall have an unrestricted hydraulic connection to the same water body or waterway associated with the lost area;

---------- 23460----------

5. the replacement area shall be located within the same general area of the water body or reach of the waterway as the lost area;

6. at least 75% of the surface of the replacement area shall be reestablished with indigenous wetland plant species within two growing seasons, and prior to said vegetative reestablishment any exposed soil in the replacement area shall be temporarily stabilized to prevent erosion in accordance with standard U.S. Soil Conservation Service methods; and

7. the replacement area shall be provided in a manner which is consistent with all other General Performance Standards for each resource area in Part III of 310 CMR 10.00.

(c) Notwithstanding the provisions of 310 CMR 10.55(4)(a), the issuing authority may issue an Order of Conditions permitting work which results in the loss of a portion of Bordering Vegetated Wetland when;

1. said portion has a surface area less than 500 square feet;

2. said portion extends in a distinct linear configuration ("finger-like") into adjacent uplands; and

3. in the judgment of the issuing authority it is not reasonable to scale down, redesign or otherwise change the proposed work so that it could be completed without loss of said wetland.

(d) Notwithstanding the provisions of 310 CMR 10.55(4)(a),(b) and (c), no project may be permitted which will have any adverse effect on specified habitat sites of rare vertebrate or invertebrate species, as identified by procedures established under 310 CMR 10.59.

(e) Any proposed work shall not destroy or otherwise impair any portion of a Bordering Vegetated Wetland that is within an Area of Critical Environmental Concern designated by the Secretary of Environmental Affairs under M.G.L. c. 21A, § 2(7) and 301 CMR 12.00. This 310 CMR 10.55(4)(e):

1. supersedes the provisions of 310 CMR 10.55(4)(b) and (c);

2. shall not apply if the presumption set forth at 310 CMR 10.55(3) is overcome;

3. shall not apply to work proposed under 310 CMR 10.53(3)(l); and

4. shall not apply to maintenance of stormwater detention, retention, or sedimentation ponds, or to maintenance of stormwater energy dissipating structures, that have been constructed in accordance with a valid order of conditions.

<General Materials (GM) - References, Annotations, or Tables>

**15.211: Minimum Setback Distances**

**310 CMR 15.211**

## CODE OF MASSACHUSETTS REGULATIONS
### TITLE 310: DEPARTMENT OF ENVIRONMENTAL PROTECTION
### CHAPTER 15.000: THE STATE ENVIRONMENTAL CODE, TITLE 5: STANDARD REQUIREMENTS FOR THE SITING, CONSTRUCTION, INSPECTION, UPGRADE AND EXPANSION OF ON-SITE SEWAGE TREATMENT AND DISPOSAL SYSTEMS AND FOR THE TRANSPORT AND DISPOSAL OF SEPTAGE

*Current through March 12, 2004, Register #995*

**15.211: Minimum Setback Distances**

(1) All systems must conform to the minimum setback distance for septic tanks and soil absorption systems, including reserve area, measured in feet and as set forth below. Where more than one setback applies, all setback requirements shall be satisfied.

|  | Septic Tank | Soil Absorption System |
|---|---|---|
| Property Line | 10 | 10 |
| Cellar Wall or Swimming Pool (inground) | 10 | 20 |
| Slab Foundation | 10 | 10 |
| Water Supply Line (pressure) | 10 1 | 10 1 |
| Surface Waters (except wetlands) | 25 | 50 |
| Bordering Vegetated Wetland (BVW), Salt Marshes, Inland and Coastal Banks | 25 | 50 |
| Surface Water Supply - Reservoirs and Impoundments | 400 | 400 |
| Tributaries to Surface Water Supplies | 200 | 200 |
| Wetlands bordering Surface Water Supply or Tributary thereto | 100 | 100 |
| Certified Vernal Pools | 50 | 100 2 |
| Private Water Supply Well or Suction Line | 50 | 100 |
| Public Water Supply Well | 2 | 2 |
| Irrigation Well | 10 | 25 |
| Open, Surface or Subsurface Drains which discharge to Surface Water Supplies or tributaries thereto | 50 | 100 |
| Other Open, Surface or Subsurface Drains (excluding foundation drains) which intercept seasonal high groundwater table 3 | 25 | 50 |
| Other Open, Surface or Subsurface Drains (excluding foundation drains) | 5 | 10 |

Leaching Catch Basins &
Dry Wells                    10        25
Downhill Slope               not applicable  15 4

1 Disposal facilities shall also be at least 18 inches below water supply lines. Wherever sewer lines must cross water supply lines, both pipes shall be constructed of class 150 pressure pipe and shall be pressure tested to assure watertightness.

2 The required setback shall be 50 feet where the applicant has provided hydrogeologic data acceptable to the approving authority demonstrating that the location of the soil absorption system is hydraulically downgradient of the vernal pool. Surface topography alone is not determinative.

3 Surface or subsurface drains which will regularly or periodically intercept the seasonal high groundwater table and carry that groundwater away from an area must meet the specified setbacks.

4 The setback distance shall be measured from a naturally-occurring downhill slope which is not steeper than 3:1 (horizontal: vertical). A minimum 15 foot horizontal separation distance shall be provided between the top of the peastone in the soil absorption system and the adjacent downhill slope. For a system located in an area with any adjacent naturally occurring downhill slope steeper than 3:1, slope stabilization shall be provided in accordance with best engineering practice which may include construction of a concrete retaining wall constructed in accordance with 310 CMR 15.255(2).

(2) No system shall be constructed within a Zone I of a public water supply well or wellfield. No system shall be upgraded or expanded within a Zone I of a public water supply well or wellfield unless a variance is granted pursuant to 310 CMR 15.410 through 15.415.

(3) All setback distances from water bodies shall be measured from the bank of the water body. All setback distances from wetlands shall be measured in accordance with the criteria of the wetlands protection act and 310 CMR 10.00, from the most landward edge of the following features: bordering vegetated wetland as defined in 310 CMR 10.55(2); salt marsh as defined in 310 CMR 10.32(2); top of inland bank as defined in 310 CMR 10.54(2); or top of coastal bank as defined in 310 CMR 10.30(2). In the event of disputes concerning landward boundary of resources subject to the Wetlands Protection Act, the boundary shall be as delineated by the municipal Conservation Commission or the Department in accordance with 310 CMR 10.00, as amended, and relevant interpretive guidance documents.

<General Materials (GM) - References, Annotations, or Tables>