UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

C.A. NO. 04-11434-NMG

DYER CONSTRUCTION, INC.,

    Plaintiff

v.

WAREHAM CONSERVATION
COMMISSION AND TOWN OF
WAREHAM,

    Defendants

DEFENDANTS' STATEMENT OF
REASONS IN SUPPORT OF THEIR
PARTIAL MOTION FOR JUDGMENT
ON THE PLEADINGS

I.    INTRODUCTION

The plaintiff, Dyer Construction, Inc. ("Dyer") has filed a three-count Complaint challenging a decision by the Wareham Conservation Commission ("Commission") to deny Dyer's application for an Order of Conditions to construct a single-family dwelling, with a septic system and associated utilities, on property owned by a non-party to the present action.

Count I of the Complaint seeks judicial review in the nature of *certiorari* and relief from the Commission's decision, pursuant to G.L. c. 249, §4. This Partial Motion for Judgment on the Pleadings does not address Count I, which rests wholly on a non-constitutional claim under state law.

Count II (¶¶ 24-26 of the Complaint) seeks a declaration that a portion of the Wareham Wetland Protective By-law ("By-law") is invalid and unconstitutional under both the United States and Massachusetts Constitutions. The challenged section of the By-law, Division VI, Article II, Section 3 ("setback requirement"), requires a 100-foot separation between a newly-constructed septic system and any wetlands, as such are defined in the Massachusetts Wetlands Protection Act, G.L. c. 131, §40. Dyer claims that the By-law's setback requirement violates its

rights to due process and equal protection under both the United States and Massachusetts Constitutions.  In Count III (¶¶ 27-29 of the Complaint), Dyer claims that the setback requirement and the Commission's denial of the requested Order of Conditions so restrict the use of the subject property as to constitute "the equivalent of a taking without compensation." Although Count III does not cite specific constitutional provisions, the Defendants presume that Count III is based on the relevant sections of the United States and Massachusetts Constitutions cited in Count II at ¶ 25 of the Complaint.

For the reasons set forth in detail below, the defendants, Town of Wareham ("Town" or "Wareham") and the Commission, request that this Court dismiss Counts II and III in their entirety, as Dyer has failed to state any valid claims for deprivation of constitutional rights. Should the Court dismiss Counts II and III, the defendants ask that Count I then be remanded to the state court for further proceedings under G.L. c. 249, §4.

II.     FACTUAL BACKGROUND[1]

1.     On or about January 15, 2004, Dyer submitted an application to the Commission, seeking an Order of Conditions to permit the installation of a subsurface sewage disposal system (i.e., a septic system) for property located at 176 Blackmore Pond Road in Wareham, Massachusetts ("Property").  (Complaint ["Compl."], ¶ 8; Administrative Record of Proceedings ["AR"], pp. 11-20).  The Property is owned by Harold Cleveland, a non-party to this suit. (Compl., ¶ 1).

2.     An Order of Conditions was necessary because a portion of the Property is

---

[1] The facts recited herein are taken from the averments of the Complaint, or refer to the contents of the Administrative Record of Proceedings previously filed (as required in state court under Massachusetts Superior Court Standing Order 1-96). The facts set forth in the Complaint are accepted as true for the purposes of this Motion only, as required by Fed. R. Civ. P. 12(b)(6) and 12(c). See "Standard of Review," infra.

situated within a resource area protected under the Massachusetts Wetland Protection Act, G.L. c. 131, §40 ("Act"), the Act's implementing regulations (310 CMR 10.00 et seq.), and the By-law. (Compl., ¶ 9).

3.      The Commission held a public hearing on February 4, 2004, at which Dyer was represented by a technical consultant.  After the close of the public hearing, the Commission voted to grant the Order of Conditions under state law, but to deny the Order of Conditions under the Wareham By-law.  The Commission found that the proposed project could be completed in compliance with the Act.  However, the Commission further found that the project did not comply with the By-law, Division VI, Article II, Section 3.  The Commission issued the challenged Order of Conditions on February 24, 2004.  (Compl., ¶¶ 11-12, 14-15 and Exhibit 1; AR, pp. 1-10, 31, 36).

4.      The pertinent portion of Division VI, Article II, Section 3 of the By-law states:

No person shall install a newly constructed septic system within **one hundred feet** (Article 78 of April 25, 1988 Town Meeting; Approved by Attorney General July 28, 1988) of any wetland as defined in Massachusetts General laws, Chapter 131, Section 40.

(AR, p. 43 [emphasis in original]).

6.      A septic system is generally permissible under the Massachusetts State Environmental Code, 310 CMR 15.000 et seq., if the septic tank is located 25 feet or more from a Bordering Vegetated Wetland ("BVW"), and the soil absorption system (i.e., the leaching field) is located 50 feet or more from a BVW.  310 CMR 15.211 (attached hereto for the Court's convenience); see also Tortorella v. Board of Health of Bourne, 39 Mass. App. Ct. 277, 282 (1995).

7.      A BVW is defined as an area where ground water discharges to the surface and where, under some circumstances, surface water discharges to the ground water.  310 CMR

3

10.55(1) (also attached hereto for the Court's convenience).  BVWs are presumed "likely to be significant to public or private water supply, to ground water supply, to flood control, to storm damage prevention, to prevention of pollution, to the protection of fisheries and to wildlife habitat."  Id.  Furthermore, BVWs "are probably the Commonwealth's most important inland habitat for wildlife."  Id.

8.      As quoted in Paragraph 5, above, the By-law has more restrictive requirements for septic system location than the State Environmental Code, since it requires that all portions of a newly-constructed septic system be located at least 100 feet from a wetland (including a BVW), as opposed to the 25/50 feet required under the state regulations.  Compare 310 CMR 15.211 with Division VI, Article II, Section 3 (AR, p. 43).

9.      In this case, the leaching field of the proposed septic system was to be situated as close as 51 feet from BVW, which did not satisfy the By-law's 100-foot setback requirement for newly constructed septic systems.  (Compl., ¶ 15; AR, pp. 5 and 30 (plan)).  Accordingly, the Commission denied the Order of Conditions for the proposed project, on the basis of the project's noncompliance with the By-law's setback requirement.  (Compl., ¶ 15; AR, p. 5).

10.     On April 23, 2004, Dyer filed its Complaint in Plymouth Superior Court, appealing the Commission's denial under the Wareham By-law of the requested Order of Conditions.  The Defendants removed the case to this Court, as Counts II and III raise federal (and state) constitutional challenges to the actions of the Commission and to the By-law generally.

III.    STANDARD OF REVIEW

The Defendants seek the dismissal of Dyer's constitutional claims raised in Counts II and III of the Complaint through this Partial Motion for Judgment on the Pleadings, pursuant to

4

Fed.R.Civ. P. 12(c). Under Rule 12(c), the reviewing court shall grant judgment in favor of the moving party if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. Burns International Security Services v. International Union UPGWA, 47 F.3d 14, 16 (2d Cir. 1995). In general, a Rule 12(c) motion is treated in the same manner as a Rule 12(b)(6) motion. Gustafson v. Jones, 117 F.3d 1015, 1017 (7th Cir. 1997). For this reason, for purposes of the motion only, all well-pleaded factual allegations in the opponent's pleading are taken as true. McKamey v. Roach, 55 F.3d 1236, 1237 (6th Cir. 1995). The reviewing court is required to accept all well-pleaded material allegations of the nonmoving party as true and to view all facts and inferences in a light most favorable to the pleader. Gaskell v. Harvard Co-op Society, 3 F.2d 495, 497-498 (1st Cir. 1993). If no material fact precludes entry of judgment, however, judgment on the pleadings is appropriate and should enter. Burns International Security Services, Inc., 47 F.3d at 16.

Thus, in opposing this motion, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Rather, the plaintiff has an affirmative responsibility to put its best foot forward in an effort to present a legal theory that will support its claims. Id. at 23 (citations omitted). In order for its claim to survive, plaintiff must set forth in its complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). The plaintiff cannot rely upon "'subjective characterizations' or unsubstantiated conclusions." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990) (citation omitted). "'[E]mpirically unverifiable' conclusions, 'not logically compelled, or at least supported by the stated facts'," deserve no deference. United States v. AVX Corp., 962 F.2d 108, 114 (1st Cir. 1992) (citing Dartmouth Review v. Dartmouth College,

5

889 F.2d 13, 16 (1st Cir. 1989)).  Similarly, the deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions."  <u>Gilbert</u> v. <u>City of Cambridge</u>, 932 F.2d 51, 62 (1st Cir. 1991), <u>cert. denied</u>, 502 U.S. 866 (1991).

In this case, as explained <u>infra</u>, both Counts II and III are subject to dismissal, either in whole or in part, due to procedural bars to suit.  Moreover, the allegations of the Complaint are insufficient to state claims under either the United States or Massachusetts Constitutions.

### IV.     ARGUMENT

A.   WHERE COUNTS II AND III OF THE COMPLAINT CHALLENGE THE CONSTITUTIONALITY OF A MUNICIPAL BY-LAW, THOSE COUNTS MUST BE DISMISSED DUE TO DYER'S FAILURE TO NOTIFY THE MASSACHUSETTS ATTORNEY GENERAL OF THE SUIT.

Count II of the Complaint seeks a declaratory judgment that the By-law's setback requirement is invalid in its application, on the basis that it violates constitutional guarantees of due process and equal protection.  Specifically, the Complaint states:

> The Plaintiff says that Wareham Wetland Protective By-Law, Division VI, Article II, section 3 is invalid in its application in that it is not a reasonable and proper exercise of the police power under the Constitution of Massachusetts, and it deprives the Plaintiff of its Property without due process of law, it imposes arbitrary, unreasonable, discriminatory, vague and indefinite standards and restrictions upon the Plaintiff's right to conduct its business, and deprives the Plaintiff of equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the Unites States and to Articles 1, 7, 10, 1, and 12 of the Declaration of Rights of the Constitution of Massachusetts.

(Compl., ¶ 25).  Similarly, Count III argues, among other things, that the By-Law's setback requirement "…constitut[es] an unreasonable exercise of the police power…", presumably on constitutional grounds. (Compl., ¶ 29).  Thus, both Counts II and III attempt to articulate constitutional challenges to the Wareham By-law.

Massachusetts law requires that the Massachusetts Attorney General be notified whenever the constitutionality of a municipal by-law is challenged in a declaratory judgment action, and provides that the Attorney General is "entitled to be heard" in such an action.  G.L. c. 231A, §8.  Significantly, under G.L. c. 231A, §8, the burden is on the <u>plaintiff</u> to so notify the

Attorney General (and not on the Court, as required under Fed. R. Civ. P. 24 for constitutional challenges to federal or state [but not local] law).  Where Dyer has failed to notify the Attorney General of the constitutional challenges to the By-law contained in Counts II and III of the Complaint, dismissal of those counts is appropriate.  Gamache v. Town of Acushnet, 14 Mass. App. Ct. 215, 223 (1982) (citations omitted).

> B.  COUNT II OF THE COMPLAINT MUST BE DISMISSED, AS DYER LACKS THE REQUISITE PROPERTY INTEREST FOR A DUE PROCESS CLAIM, HAS AN ADEQUATE STATE REMEDY FOR ANY ASSERTED DEPRIVATION OF PROCEDURAL DUE PROCESS, AND HAS FAILED TO ALLEGE FACTS TO SUPPORT A CLAIM FOR DENIAL OF SUBSTANTIVE DUE PROCESS.
>
> 1.  Dyer has no property interest in receiving approval of an Order of Conditions from the Commission, and Dyer's due process claim should therefore be dismissed.

As a preliminary jurisdictional issue, Dyer lacks the property interest that is a prerequisite for alleging a deprivation of either its substantive or procedural due process rights under both the United States and Massachusetts Constitutions.[2]   That portion of Count II that seeks relief for alleged due process violations must therefore be dismissed.

To plead a substantive or procedural due process claim, Dyer must show that it had a property interest in the requested Order of Conditions, and that such interest was deprived without due process.  Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

---

[2] The Massachusetts Supreme Judicial Court has held that due process rights under the Massachusetts Constitution, Pt. I, Art. 10, are analogous to those provided by the Fourteenth Amendment to the U.S. Constitution.  Gray v. Commissioner of Revenue, 422 Mass. 666, 676 (1996).

7

Here, the permit that Dyer sought was subject to the Commission's discretion. Where a local authority has discretion to grant or withhold a permit, there is no legitimate claim of entitlement to the permit, and the denial of the permit will not give rise to a due process claim. See Chongris v. Board of Appeals for the Town of Andover, 811 F.2d 36, 43 (1st Cir. 1987) (submission of application does not create entitlement to license); Hovanian at Taunton, Inc. v. City of Taunton, 37 Mass. App. Ct. 639, 646-648 (1994) (where reviewing body has broad discretion to grant or deny permit, likelihood greatly diminished of property interest in permit). Here, the Commission has broad discretionary authority under the By-law to grant or deny an Order of Conditions after assessing the effects of a proposed project on protected wetlands resources and interests. See, e.g., Division VI, Article I, ¶ 5 (AR., p. 42). As such, Dyer cannot establish a legitimate claim of entitlement to issuance of the requested Order of Conditions, an essential element of any due process claim.[3] Accordingly, Dyer has failed to state a viable claim for a deprivation of substantive or procedural due process.

> 2. Dyer cannot claim a denial of procedural due process, because it received the process required by statute, and a separate adequate post-deprivation remedy exists under state law.

If the Court were to find that Dyer possessed a constitutionally-protected property interest, any procedural due process claim in this case still fails. First, there simply was no violation of procedural due process: Dyer received the process to which it was due under the law, i.e., a public hearing prior to the Commission's decision. G.L. c. 131, §40. Second, an adequate post-deprivation remedy exists under state law, as demonstrated by the action in the nature of *certiorari* that is the basis for Count I of the Complaint. For these reasons, as discussed more fully below, any procedural due process claim must be dismissed.

Under the Act and the By-law, Dyer received the process that it was due.  Dyer had the opportunity to submit an application to support its assertion that its project met statutory requirements.  (See AR, pp. 1-30).  The Commission thereafter scheduled and held a hearing on Dyer's application, with notice to any interested parties, as required under G.L. c.131, §40.  (See AR, pp. 27-29, 31, 33-39).  Dyer's representative was allowed to appear and make a presentation at that hearing (and, in fact, did so), in support of its application. (Compl., ¶ 8-12; AR, pp. 31, 36).  Whatever its disagreement with the substance of the Commission's decision or the requirements of the By-law, Dyer cannot reasonably claim to have been deprived of procedural due process.

Further, even if such a constitutional claim is presented by the Complaint, it is barred where, as here, adequate post-deprivation remedies exist under state law.  "[A] procedural due process claim is not actionable unless, *inter alia*, no adequate 'post-deprivation remedy' is available under state law."  See Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994); Burnham v. City of Salem, Mass., 101 F.Supp.2d 26, 35 (D. Mass. 2000).  The Court of Appeals for the First Circuit has routinely applied this principle to claims arising from the denial of local land use permits.  See Chongris v. Board of Appeals of Andover, 811 F.2d 38, 40 (1st Cir. 1987), cert. denied, 483 U.S. 1021 (1987); Chiplin Enter., Inc. v. City of Lebanon, 712 F.2d 1524, 1527-1528 (1st Cir. 1983); Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 832 n.9 (1st Cir. 1982).  Massachusetts appellate courts likewise reject due process challenges to actions of agencies and local boards where judicial review is available.  See, e.g., Rosenfeld v. Board of Health of Chilmark, 27 Mass. App. Ct. 621, 627-628 (1989).

---

[3] To the extent that this Court views the Commission's decision as nondiscretionary in this instance, the required outcome was denial of the project, for failure to comply with the By-law's objective setback requirement.

9

In the present case, the plaintiff has a remedy under state law, i.e., *certiorari* review of the Commission's denial of the Order of Conditions, pursuant to G.L. c. 249, §4, a remedy which plaintiff is in fact pursuing in this case under Count I of the Complaint.  Plaintiff has made no assertion that the state law remedy is inadequate, nor could such an assertion be legitimately advanced.  Therefore, any claims under Count II of the Complaint for procedural due process violations must be dimissed.

        3.      Dyer has failed to state a claim for violation of its substantive due process rights.

Turning now to consideration of Dyer's substantive due process rights, if any, Dyer alleges that the By-law's setback requirement is "invalid in its application," but also appears to allege that the setback requirement is facially invalid insofar as it "is not a reasonable and proper exercise of the police power under the Constitution of Massachusetts" and "imposes arbitrary, unreasonable, . . . vague and indefinite standards and restrictions upon the Plaintiff's right to conduct its business . . . . "  (Compl., ¶25).  Whether Dyer's substantive due process claim is characterized as challenging the By-law's setback requirement on a facial or as-applied basis, Dyer has failed to articulate a viable claim.

        a.      <u>The setback requirement is facially valid</u>.

The By-law's setback requirement satisfies the "rational basis" standard for <u>facial</u> constitutional validity, and Dyer has not alleged the extreme misconduct or abuse of power that would be required for a finding that Dyer's right of substantive due process had been violated in this instance by the Commission's application of the setback requirement.  Federal and Massachusetts courts have both repeatedly rejected attempts to characterize the denial of a land use permit as a deprivation of constitutional rights, unless the enabling statute lacks a valid public purpose or the permitting agency has displayed extreme misconduct in handling the

10

particular application. Neither circumstance is present here, and to the extent that the Complaint articulates a substantive due process claim under Count II, it must therefore be dismissed.

The standard for adjudicating facial substantive due process challenges to land use statutes, by-laws, and regulations is whether "a <u>conceivable</u> rational relationship" exists between the challenged controls and "legitimate governmental ends." <u>Smithfield Concerned Citizens for Fair Zoning</u> v. <u>Town of Smithfield</u>, 907 F.2d 239, 244 (1st Cir. 1990) (emphasis in original). Great deference is shown to the legislative body under this "rational basis" test, and a court will not consider whether the chosen measures are the best possible way to achieve statutory goals, as long as there is some rational relation between them. <u>Id.</u>, at 244-245.

In this case, the By-law's setback requirement, and the By-law as a whole, serve a legitimate public purpose, *e.g.*, the protection of important wetland resources. The requirement of a minimum distance between wetlands and a potential source of pollution or contamination is rationally related to the public purpose, and the State Environmental Code (which Dyer does not challenge) itself establishes minimum setback distances for septic systems. 310 CMR 15.211. It is well-settled that municipalities may impose greater setbacks for septic systems than the minimums specified in the State Environmental Code, and the 100-foot setback in the By-law is not unreasonable. <u>See</u>, <u>e.g.</u>, <u>T.D.J. Dev. Corp.</u> v. <u>Conservation Comm'n of North Andover</u>, 30 Mass. App. Ct. 124, 125-128 (1994). Indeed, the Massachusetts Appeals Court has upheld a municipal requirement, contained in the town's wetlands by-law and its board of health regulations, that leaching fields be a minimum of 150 feet from wetlands—50 feet farther than Wareham's By-law requires. <u>See</u> <u>Tortorella</u>, 39 Mass. App. Ct. at 282-283.

In claiming a denial of due process, Dyer alleges that the By-law's setback requirement imposes "vague and indefinite standards and restrictions[.]" (Compl., ¶25). Such an allegation

11

is directly contradicted by the text of the By-law itself, which imposes a specific, numerical requirement for the minimum setback of a new septic system from BVW.  (AR, p. 43).  Hence, the By-law's setback requirement cannot be adjudged to be impermissibly vague, because it clearly specifies the conduct that is prohibited.  See Donovan v. City of Haverhill, 311 F.3d 74, 77-78 (1st Cir. 2002).  Further, it cannot be said that "people of common intelligence must necessarily guess at [the setback requirement's] meaning and differ as to its application." Lopez v. Spencer, 961 F.Supp. 332, 335 (D. Mass. 1997).

       b.  The setback requirement is valid as applied.

  Dyer has likewise failed to state a valid claim that the By-law's setback requirement, as applied, violates Dyer's substantive due process rights.  The United States Court of Appeals for the First Circuit and the Massachusetts Supreme Judicial Court have often expressed their reluctance to entertain substantive due process challenges to land use decisions by local boards.  See, e.g., PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) ("This Court has repeatedly held…that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process."); Chiplin Enters., Inc., 712 F.2d at 1528 (denying due process claim for alleged unreasonable delay on application for building permit); Creative Environments, Inc., 680 F.2d 822 at 833; see also Freeman v. Planning Bd. of West Boylston, 419 Mass. 548 (1995) (reversing jury verdict of substantive due process violation against planning board), cert. denied, 516 U.S. 931 (1995).  "Indeed, the First Circuit has held that denials, suspensions, and revocations of permits or professional licenses, including those involving procedural irregularity, do not ordinarily implicate substantive due process." Fitzgerald v. Town of Kingston, 13 F.Supp.2d 119, 125 (D. Mass. 1999).

A complaint pleads a substantive due process violation by a local administrative agency only if the facts alleged are "shocking or violative of universal standards of decency." Amsden, 904 F.2d at 757 (quoting Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir. 1979), cert. denied, 444 U.S. 1035 (1980)). The plaintiff must allege government conduct that is nothing short of "truly horrendous." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992). The First Circuit has particularly required "conscience shocking" behavior to be established for a plaintiff to pursue a claim for substantive due process in the context of land use permitting. See Licari v. Ferruzzi, 22 F.3d 344, 349 (1st Cir. 1994). The level of misconduct must be "stunning, evidencing more than humdrum legal error." Amsden, 904 F.2d at 754 n.5. It is not enough to show that the board "exceeded, abused or 'distorted' its legal authority," Creative Environments, Inc., 680 F.2d at 833, or that it committed an outright violation of state law, Chiplin, 712 F.2d at 1528. "It is bedrock law in this circuit . . . that violations of state law--even where arbitrary, capricious, or undertaken in bad faith--do not, without more, give rise to a denial of substantive due process under the U.S. Constitution." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992).

Dyer has not alleged any facts that would support characterizing the Commission's decision as "truly horrendous" or "shocking or violative of universal standards of decency." Any substantive due process claim based upon the Commission's application of the By-law to Dyer's proposed project must therefore be dismissed, leaving Dyer to pursue the judicial review available to it under G.L. c. 249, §4.

    C.    DYER'S CLAIM FOR A DEPRIVATION OF ITS CONSTITUTIONAL RIGHT TO EQUAL PROTECTION OF THE LAW, AS STATED IN COUNT II OF THE COMPLAINT, MUST BE DISMISSED, AS DYER HAS NOT ALLEGED ANY FACTS SHOWING INEQUITABLE TREATMENT BASED ON IMPERMISSIBLE CONSIDERATIONS.

In Count II of its Complaint, Dyer seeks a declaratory judgment that the By-law's setback requirement "is invalid in its application" because, *inter alia*, it "deprives the Plaintiff of equal protection of the laws," contrary to the Fourteenth Amendment of the U.S. Constitution and Articles 1,7,10,11,12 of the Declaration of Rights of the Massachusetts Constitution.[4] (Compl., ¶25). This single conclusory allegation is the only reference in the Complaint to a deprivation of equal protection, and Dyer has not made any factual allegations in the Complaint to support such a claim. This failure to plead "facts sufficient to convey specific instances of unlawful discrimination" is reason enough for dismissal of Dyer's equal protection claim. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990) (quoting Dartmouth Review, 889 F.2d at 16).

To establish a denial of equal protection, a plaintiff must show: (1) that it was treated differently from others similarly situated; and (2) that the selective treatment was based on impermissible considerations, such as discrimination against members of protected classes or an intent to inhibit or punish the exercise of constitutional rights. "[A]s a general matter, the equal protection clause serves to protect suspect classes and fundamental interests from inequitable treatment." Yerardis's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph, 932 F.2d. 89, 94 (1st Cir. 1991).

> "Liability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

---

[4] Dyer does not specify which Articles of the Declaration of Rights correspond to its various constitutional claims. The Defendants presume that Dyer's state equal protection claim is asserted on the basis of Article 1 of the Declaration of Rights. The standard of review for equal protection claims is identical under the Federal and Massachusetts Constitutions. Murphy v. Department of Correction, 429 Mass. 736, 739 n.3 (1999).

Id. at 92 (quotation and citation omitted).[5]

Dyer has not alleged that it was treated differently from a similarly situated party, or that the Commission applied the By-law's setback requirement in a selective or disparate manner to his application. Nor has Dyer made any allegation of an exercise of bad faith by the Commission, or a motivating animus towards Dyer. Both unequal treatment, and intentional and purposeful discrimination, are required to raise a constitutional claim to denial of equal protection:

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.

Snowden v. Hughes, 321 U.S. 1, 8 (1944).

Further, a challenge to land use regulation based on a denial of equal protection is only viable in the case of unusual and egregious conduct by public officials, which Dyer has not alleged in this case. Both the Court of Appeals for the First Circuit and the Massachusetts Supreme Judicial Court have emphasized that equal protection claims are rarely valid in the case of challenges to decisions of local land use regulatory entities, given the availability (as in the current case) of other remedies under state law. In Creative Environments, Inc., the First Circuit noted that an equal protection claim challenging the denial of land use permit approvals may be valid where the challenged official conduct involves "gross abuse of power, invidious discrimination, or fundamentally unfair procedures[,]" but not where the litigation involves "the run of the mill dispute between a developer and a town planning agency[.]" 680 F.2d at 832-833 & n.9. The Creative Environments Court further stated:

---

[5] Even if Dyer claims to be a "class of one" for equal protection purposes, it has not alleged any facts in support of a claim of discriminatory treatment, nor evidence of an arbitrary or improper motive on the part of the Commission or

> [E]very appeal by a disappointed developer from an adverse ruling . . . necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question . . . .

Id.; see also PFZ Properties, Inc. v. Rodrigues, 928 F.2d 28, 32 (1st Cir. 1991); Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995).

Massachusetts courts have similarly given short shrift to equal protection (and due process) claims brought by disgruntled land-use permit applicants:

> Due process or equal protection claims are very seldom the means to seek review of the actions of land use agencies, with the door only slightly ajar for relief in "truly horrendous situations."

Wyman v. Zoning Bd. of Appeals of Grafton, 47 Mass. App. Ct. 635, 636 (1999) (citations omitted).

Dyer has stated its equal protection claim in terms of the "application" of the By-law's setback requirement. Even if his claim could somehow be construed as a facial challenge to the setback requirement, it would still fail to state a claim for relief that would be independent of the substantive due process claim addressed supra. See Gilbert, 932 F.2d at 66 (facial equal protection claim dismissed as reformulation of invalid substantive due process claim). If Dyer intends to claim that the By-law's setback requirement facially denies equal protection, its claim must fail. Moreover, without allegations of invidious discrimination against a suspect class or the abridgement of a fundamental right, a law that establishes classifications will be subject facially only to "rational basis" review, and will be upheld as long as it bears a rational relation to a legitimate public purpose. See Romer v. Evans, 517 U.S. 618, 633 (1996); Murphy, 429 Mass. at 739-740. As stated above, wetlands protection is a legitimate public purpose furthered

---

the Town for the denial of the Order of Conditions under the By-law. See Donovan v. City of Haverill, 311 F.3d

by both state and local regulation, and preventing the siting of septic systems in close proximity to wetlands promotes the wetland values sought to be protected under state and local law. The Court must defer to this reasonable legislative classification. See Murphy, 429 Mass. at 753.

> D. COUNT III OF THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION, WHERE DYER, AS A NON-OWNER, LACKS STANDING TO PURSUE A CLAIM FOR A REGULATORY TAKING, AND WHERE DYER HAS NOT YET PURSUED AVAILABLE STATE REMEDIES TO OBTAIN COMPENSATION.

Dyer claims in Count III that the application of the By-law's setback requirement, through the Commission's denial of the Order of Conditions, constitutes a taking without compensation. (Compl., ¶ 29). Assuming that Dyer's claim rests on constitutional grounds[6], it must be dismissed, because Dyer lacks standing and the claim, in any event, is not ripe for adjudication.

> 1. As a non-owner of the Property, Dyer lacks standing to bring a claim for a regulatory taking.

Dyer admits that it is not the owner of the Property, nor was it the owner at the time the Commission issued its denial of the Order of Conditions. (Compl., ¶ 1). Rather, Harold Cleveland, who is not a party to this action, is the owner of the Property. (Id; see also AR, p.13 (identifying Dyer as the applicant for the Order of Conditions, and Cleveland as the owner of the Property)). The proper party to assert a taking claim is the owner of the property, as it is the owner's fee in the property that is diminished by the taking. See, e.g., Evangelical Lutheran

---

74, 76-7 (2002), citing Village of Willowbrook v. Olech, 528 U.S. 564 (2000).

[6] Dyer does not specify the constitutional basis for its claim in Count III of the Complaint that the denial of the Order of Conditions constitutes a "taking without compensation." Defendants have presumed that Dyer relies on the provisions of the United States and Massachusetts Constitutions cited in Count II that would conceivably be relevant to a taking claim, namely the Fifth and Fourteenth Amendments of the United States Constitution, and Article 10 of the Declaration of Rights to the Massachusetts Constitution. Analysis of a regulatory taking claim under either the Federal or Massachusetts Constitutions is substantially the same. Quinn v. Rent Control Board of Peabody, 45 Mass. App. Ct. 357, 373 n. 17 (1998); Bromfield v. Treasurer & Receiver Gen., 390 Mass. 665, 668 (1983) (state constitution affords parallel protection to United States Constitution of taking claims); Davidson v. Commonwealth, 8 Mass. App. Ct. 541, 546-547 n.7 (1979).

Church of Glendale v. County of Los Angeles, 482 U.S. 304, 318-320 (1987); see also Howland v. Greenfield, 231 Mass. 147, 148 (1918). "One may not claim standing to vindicate the constitutional rights of a third party." Slama v. Attorney General, 384 Mass. 620, 624 (1981) (citation omitted). Further, a third party should not litigate the rights of a landowner when there is nothing preventing the landowner from bringing suit or requiring the third party to litigate on behalf of the landowner. Singleton v. Wulff, 428 U.S. 106, 115 (1976). Dyer's bald allegation that it is the "contract purchaser" (Compl., ¶ 1) of the Property does not aid the Court in determining whether Dyer has sufficient legal interest in the Property such that its property rights might be affected by the Commission's decision.

As Dyer is not the owner of the Property, and was not the owner when the Commission issued the denial of the Order of Conditions, Dyer lacks standing to pursue a claim for regulatory taking. Count III of the Complaint must therefore be dismissed.

> 2. Dyer has not pursued compensation through remedies available under Massachusetts law, and its Federal regulatory taking claim is therefore not ripe for adjudication.

Even assuming, arguendo, that this Court finds that Dyer has standing to pursue a Federal regulatory taking claim in the present case, Count III of the Complaint must still be dismissed, as such a claim is not yet ripe for adjudication, and the Court therefore lacks subject matter jurisdiction. First, and perhaps foremost, until such time as the Commission's Decision has been adjudicated to be incorrect, plaintiff simply cannot establish that the Decision resulted in a regulatory taking. In other words, Count III does not become ripe until the state court (or other court of competent jurisdiction) resolves Count I of the Complaint in plaintiff's favor.

Second, Dyer has not alleged or shown that it has sought, and been denied, just compensation through the remedial procedures provided under Massachusetts law. That step is a

prerequisite for asserting a constitutional claim of a taking without just compensation, and Dyer's failure to pursue that relief means that its claim must be dismissed as premature.[7]

In the taking context, "no constitutional violation occurs until just compensation has been denied." Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 n. 13 (1985). In Williamson, the Court found that a taking claim is not ripe until petitioners "seek compensation through the procedures that the state has provided for doing so." Id. If the state "provides an adequate process for obtaining compensation, and resort to that process holds out some realistic promise of yielding just compensation, an owner of property has no cognizable claim against the State in respect to an alleged confiscation." Gilbert, 932 F.2d at 63.

The United States District Court for the District of Massachusetts has recognized that G.L. c. 79, which establishes a right of compensation for inverse condemnation, "provides a means by which a plaintiff may seek redress for an alleged deprivation of property" and "that remedy has been found to be adequate." Marietta Realty, Inc. v. Springfield Redev. Auth., 902 F.Supp. 310, 313 (D. Mass. 1995) (where plaintiff sought compensation for diminution in property value caused by an announced but unexecuted eminent-domain taking, claim was barred by plaintiff's failure to pursue compensation under G.L. c. 79).

As in Williamson and Marietta, Dyer here claims that the decision of a public authority has effectively taken its property, but Dyer has failed entirely to pursue the remedies provided to it by G.L. c. 79, a comprehensive statutory scheme allowing property owners to pursue compensation for property allegedly taken. Under these circumstances, the holding in Williamson clearly controls. A plaintiff may not seek to bypass the judicial procedure created by

---

[7] The analysis of the procedural prerequisites for a Federal taking claim is the same, whether the claim is asserted under the due process protections of the Fourteenth Amendment or the just-compensation clause of the Fifth Amendment. See Marietta Realty, Inc. v. Springfield Redev. Auth., 902 F.Supp. 310, 313-314 (D. Mass. 1995).

a state legislature for the award of compensation for a taking, by bringing a Federal taking claim. Accordingly, Dyer's taking claim is not ripe, and it must therefore be dismissed for lack of subject matter jurisdiction.

### V. CONCLUSION

WHEREFORE, for the reasons set forth above, the Defendants respectfully request that this Court dismiss Count II and Count III of the Complaint.

DEFENDANTS WAREHAM CONSERVATION COMMISSION AND TOWN OF WAREHAM,

By their attorneys,

_____
Michele E. Randazzo (BBO #564906)
Kopelman and Paige, P.C.
Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

224615v2/WARH/0194